# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | | |
|---|---|---|
| BITUMINOUS CASUALTY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| WALDEN RESOURCES, LLC, AMWES EXPLORATION, LLC, DANIEL POTTS, ZTX DRILLING, LLC, JONATHAN D. VANN, LEXINGTON INSURANCE COMPANY, NATIONAL POLLUTION FUNDS CENTER, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, WILD WELL CONTROL, INC., MARLOW VOLUNTEER FIRE DEPARTMENT, SUPERIOR WELL SERVICES, INC., GRIFFITH SERVICES, LLC, BLOWOUT TOOLS, INC., UNIVERSAL WELL SERVICES, INC., MILLER PETROLEUM, INC., FAY PORTABLE BUILDINGS, INC., ENGINEERING CONSTRUCTION SERVICES, INC., DIG IT UP EXCAVATION CO., VOLUNTEER TRENCHING, BILLINGS CRANE & MECHANICAL, INC., B. J. SERVICES COMPANY, NORTH EAST MUD SERVICES COMPANY, LLC, L&D WELL SERVICE, EAST TENNESSEE CONSTRUCTION, QUALITY SUPPLY, BRAD PENNINGTON, ROBERT KELLY, DEBRA KELLY, AND CLIFFORD N. HENDERSON, JR., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT, COMPLAINT OF INTERPLEADER AND COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF

Comes now the plaintiff, Bituminous Casualty Corporation (hereinafter referred to as "Bituminous"), through counsel, and alleges as follows:

## I. THE PARTIES

1.      Bituminous is an insurance company incorporated under the laws of the State of Illinois, with its principal place of business located at Rock Island, Illinois. Bituminous has complied with the laws of the State of Tennessee, as well as the Commonwealth of Kentucky, pertaining to corporations engaged in insurance business therein. Bituminous is a citizen and resident of the State of Illinois for purposes of 28 U.S.C. § 1332.

2.      Defendant Walden Resources, LLC, is a Tennessee limited liability company with its principal place of business in Petros, Tennessee. Defendant Walden Resources, LLC (hereinafter referred to as "Walden"), is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

3.      Defendant AMWES Exploration, LLC is a Florida limited liability company with its principal place of business in Ft. Myers, Florida. Defendant AMWES Exploration, LLC (hereinafter referred to as "AMWES"), is thus a citizen and resident of the State of Florida for purposes of 28 U.S.C. § 1332.

4.      Defendant Daniel Potts is an individual residing in Morgan County, Tennessee. Defendant Daniel Potts (hereinafter referred to as "Potts"), is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

5.      Defendant ZTX Drilling, LLC is a Florida limited liability company with its principal place of business in Ft. Myers, Florida. Defendant ZTX Drilling, LLC (hereinafter referred to as "ZTX"), is thus a citizen and resident of the State of Florida for

purposes of 28 U.S.C. § 1332. ZTX is listed as an additional named insured on the policy of insurance issued by Bituminous to AMWES.

6.    Defendant Jonathan D. Vann is an individual residing in Roane County, Tennessee. Defendant Jonathan D. Vann (hereinafter referred to as "Vann"), is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

7.    Defendant Lexington Insurance Company is Maryland corporation with its principal place of business in Boston, Massachusetts. Defendant Lexington Insurance Company is thus a citizen and resident of the State of Maryland and the State of Massachusetts for purposes of 28 U.S.C. § 1332.

8.    Defendant National Pollution Funds Center is an agency of the United States Government.    Defendant National Pollution Funds Center is considered a resident of the District of Columbia for purposes of 28 U.S.C. § 1332.

9.    Defendant United States Environmental Protection Agency is an agency of the United States Government.    Defendant United States Environmental Protection Agency is considered a resident of the District of Columbia for purposes of 28 U.S.C. § 1332.

10.    Defendant Wild Well Control, Inc. is a Texas corporation with its principal place of business in Houston, Texas. Defendant Wild Well Control is thus a citizen and resident of the State of Texas for purposes of 28 U.S.C. § 1332.

11.    Defendant Marlow Volunteer Fire Department is a Tennessee independent, non-profit corporation with its principal place of business in Anderson County, Tennessee. Defendant Marlow Volunteer Fire Department is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

12.    Defendant Superior Well Services, Inc. is a Delaware corporation with its principal place of business in Indiana, Pennsylvania. Defendant Superior Well Services is thus a citizen and resident of the State of Delaware and the State of Pennsylvania for purposes of 28 U.S.C. § 1332.

13.    Defendant Griffith Services, LLC is a Tennessee limited liability company with its principal place of business in Oak Ridge, Tennessee. Defendant Griffith Services, LLC is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

14.    Defendant Blowout Tools, Inc. is a Texas corporation with its principal place of business in Houston, Texas. Defendant Blowout Tools, Inc. is thus a citizen and resident of the State of Texas for purposes of 28 U.S.C. § 1332.

15.    Defendant Universal Well Services, Inc. is a Delaware corporation with its principal place of business in Snyder, Texas. Defendant Universal Well Services, Inc. is thus a citizen and resident of the State of Delaware and the State of Texas for purposes of 28 U.S.C. § 1332.

16.    Defendant Miller Petroleum, Inc. is a Tennessee corporation with its principal place of business in Huntsville, Tennessee. Defendant Miller Petroleum, Inc. is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

17.    Defendant Fay Portable Buildings, Inc. is a Tennessee corporation with its principal place of business in Knoxville, Tennessee. Defendant Fay Portable Buildings, Inc. is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

18.    Defendant Engineering Construction Services, Inc. is a Tennessee

corporation with its principal place of business in Oliver Springs, Tennessee. Defendant Engineering Construction Services, Inc. is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

19.    Defendant Dig It Up Excavation Co. is a Tennessee business with its principal place of business in Oliver Springs, Tennessee. Defendant Dig It Up Excavation Co. is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

20.    Defendant Volunteer Trenching is a Tennessee business with its principal place of business in Jacksboro, Tennessee. Defendant Volunteer Trenching is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

21.    Defendant Billings Crane & Mechanical, Inc. is a Tennessee corporation with its principal place of business in Cookeville, Tennessee. Defendant Billings Crane & Mechanical, Inc. is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

22.    Defendant B. J. Services Company is a Delaware corporation with its principal place of business in Houston, Texas. Defendant B. J. Services Company is thus a citizen and resident of the State of Delaware and the State of Texas for purposes of 28 U.S.C. § 1332.

23.    Defendant North East Mud Services Company, LLC is a West Virginia limited liability company with its principal place of business in Bridgeport, West Virginia. Defendant North East Mud Services Company, LLC is thus a citizen and resident of the State of West Virginia for purposes of 28 U.S.C. § 1332.

24.    Defendant L&D Well Service is a Virginia corporation with its principal

place of business in Vansant, Virginia. Defendant L&D Well Service is thus a citizen and resident of the State of Virginia for purposes of 28 U.S.C. § 1332.

25.     Defendant East Tennessee Construction is a Tennessee business with its principal place of business in Oliver Springs, Tennessee. Defendant East Tennessee Construction is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

26.     Defendant Quality Supply is a Tennessee company with its principal place of business in Coalfield, Tennessee. Defendant Quality Supply is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

27.     Defendant Brad Pennington is an individual residing in Anderson County, Tennessee. Defendant Brad Pennington is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

28.     Defendant Robert Kelly is an individual residing in Anderson County, Tennessee.  Defendant Robert Kelly is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

29.     Defendant Debra Kelly is an individual residing in Anderson County, Tennessee.  Defendant Debra Kelly is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

30.     Defendant Clifford N. Henderson, Jr. is an individual residing in Blount County, Tennessee. Defendant Clifford N. Henderson, Jr. is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

## II. VENUE, JURISDICTION AND BASIC FACTS

31.     This action arises from an event occurring on March 18, 2008 at an oil well

known as "Parten 5" located at 1834 or 1835 Cove Road, Oliver Springs, Anderson County, Tennessee (hereinafter referred to as "the subject well"). On March 18, 2008, defendant Potts had an individual interest in the subject well, as well as the oil and gas leases/rights to the property. On March 18, 2008, defendant Potts was the primary owner and operator of defendant Walden, and defendant Walden entered in a drilling contract with defendant ZTX for drilling of the subject well. On March 18, 2008, at approximately 1:00 p.m. a blowout preventer failed, causing a discharge of oil and natural gas from the subject well. Various individuals and entities were notified of the spill, and many, including several of the parties to this action, responded to provide services, supplies, etc., for purposes of containing and cleaning up the spill. Subsequently, while work was still being done to contain and cleanup the spill, a vehicle sparked a fire that resulted in a large explosion. Additional individuals and entities responded to assist with control and extinguishment of the fire, and various property in the area was damaged by the spill, fire, and/or explosion. As a result of the aforementioned incident, multiple claims have been presented to Bituminous, as liability insurer for defendants Walden and ZTX, and Bituminous has been unable to settle all of those claims. The respective policy limits are insufficient to satisfy all demands and/or exposure. Bituminous cannot determine which individuals and/or entities should be paid, or the amounts to be paid to each such claimant. The total amount of the claims asserted by the various claimants against Bituminous, and its insureds, exceeds the limits of coverage in this case.

.     32.     This action is brought, in part, pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure. This action is further brought pursuant to the Federal Interpleader Act, 28 U.S.C. § 1335

and Rule 22 of the Federal Rules of Civil Procedure. Finally, this action involves determination of a Federal Question under 28 U.S.C. § 1331.

33.    Jurisdiction exists in this Court pursuant to the provisions of 28 U.S.C. §§133, 1332 and 1335. The amount in controversy is the remaining amounts of policy limits with respect to the policies issued by Bituminous to defendant Walden and defendant AMWES, to be discussed in more detail below, that being in excess of One Million Nine Hundred Thousand Dollars ($1,900,000.00). Thus, the total amount in controversy exceeds the minimum jurisdictional limit of this Court, exclusive of interest and cost. Based upon the foregoing, venue is proper in this Court and in this Division, pursuant to 28 U.S.C. § 1391 and § 123(a)(1), respectively

## III. FACTS

34.    On March 18, 2008, Bituminous had in full force and effect policy number CLP 3 242 831 insuring defendant Walden and any others entitled to protection pursuant to the terms and conditions of the insurance policy. A true and exact, certified copy of the policy is attached hereto as Exhibit 1, and is hereinafter referred to as "the Walden policy."

35.    The insuring agreement of the Walden policy, contained in form CG 00 01 12 04, provided as follows:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does

not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.**　　This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**　　"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**　　"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

* * * * *

### SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

36. The basic policy form also contains exclusions which may preclude

coverage for claims discussed here advanced as a result of the above incident:

**2.** **Exclusions**

This insurance does not apply to:

* * * * *

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * * * *

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

* * * * * *

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

37.     In addition, and perhaps most importantly, the policy contained the

following exclusion in endorsement CG 21 55 09 99, entitled "Total Pollution Exclusion

with a Hostile Fire Exception", which provided as follows:

**TOTAL POLLUTION EXCLUSION WITH A HOSPITAL FIRE EXCEPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2, Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.**    **Pollution**

    **(1)**    'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.

        This exclusion does not apply to 'bodily injury' or 'property damage' arising out of heat, smoke or fumes from a 'hostile fire' unless that 'hostile fire' occurred or originated:

        **(a)**    At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

        **(b)**    At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of 'pollutants'.

    **(2)**    Any loss, cost or expense arising out of any:

        **(a)**    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants'; or

        **(b)**    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, 'pollutants'.

38.    The Walden policy contained the following definitions:

    **7.**    "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

* * * * * *

    **15.**    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

39.     Many of the claims advanced as a result of the event described above would be excluded by application of this exclusion.

40.     There is no other policy or coverage issued by Bituminous which would provide any coverage for any claims referenced herein.

41.     The following defendants have asserted a claim against Walden and/or Dan Potts resulting from the events described above:

| | |
|---|---|
| Name: | Jonathan Vann |
| Date: | Amended Complaint, styled *Vann v. Walden Resources, LLC and ZTX Drilling, LLC*, filed 10/02/2008 in Anderson County Circuit Court under docket number A8LA0229 |
| Claim: | $4.5 million |
| | |
| Name: | Superior Well Services and Griffith Services, LLC |
| Date: | Complaint, styled *Superior Well Services, and Griffith Services, LLC v. Dan Potts d/b/a Walden Resources, LLC, Walden Resources, LLC, Individually, and ZTX Drilling, LLC*, filed 2/03/2009 in Anderson County Circuit Court under docket number A9LA0050 |
| Claim: | $919,256.00 |
| | |
| Name: | Wild Well Control |
| Invoice No: | 01755 |
| Claim: | $460,355.78 for blowout and pressure control services, equipment rental, third-party freight mobilization charges. |
| | |
| Name: | Wild Well Control |
| Invoice No: | 01794 |
| Claim: | $61,844.69 for third-party freight and mobilization charges. |
| | |
| Name: | Blowout Tools, Inc. |
| Invoice No: | LA63349 |
| Claim: | $30,393.97 for labor, travel expenses, and re-stocking charge for equipment. |
| | |
| Name: | Universal Well Services, Inc. |

| | |
|---|---|
| Invoice No: | 000049620 |
| Claim: | $23,516.27 for pump equipment, sand delivery, and fuel surcharge. |
| | |
| Name: | Miller Petroleum, Inc. |
| Invoice No: | 0804-001 |
| Claim: | $8,045.00 for vacuum truck and labor. |
| | |
| Name: | Fay Portable Buildings, Inc. |
| Invoice No: | 060389 |
| Claim: | $436.00 for short term toilet rental. |
| | |
| Name: | Engineering Construction Services, Inc. |
| Invoice No: | 1067 |
| Claim: | $11,124.64 for hauling sand and rock and fuel surcharge. |
| | |
| Name: | Dig It Up Excavation Co. |
| Invoice No: | 1032 |
| Claim: | $18,765.00 for excavation and damage control with dozer and backhoe. |
| | |
| Name: | Dig It Up Excavation Co. |
| Invoice No: | 1033 |
| Claim: | $2,709.00 for excavation and damage control with dozer and backhoe, as well as fuel put into ZTX dozer. |
| | |
| Name: | Volunteer Trenching |
| Invoice No: | 1 |
| Claim: | $47,189.27 for dozer, track hoe, and pump truck. |
| | |
| Name: | Billings Crane & Mechanical, Inc. |
| Invoice No: | 1587 |
| Claim: | $22,520.00 for labor to operate hydraulic crane. |
| | |
| Name: | Billings Crane & Mechanical, Inc. |
| Invoice No: | 1586 |
| Claim: | $19,400.00 for use of hydraulic crane. |
| | |
| Name: | B. J. Services Company |
| Invoice No: | 1364866 |

| | |
|---|---|
| Claim: | $104,485.10 for labor for well control field supervisor and equipment operator, well control and cut off equipment and tools. |
| | |
| Name: | North East Mud Services Company, LLC |
| Invoice No: | 0000668-IN |
| Claim: | $5,440.50 for salt. |
| | |
| Name: | North East Mud Services Company, LLC |
| Invoice No: | 0000599-IN |
| Claim: | $2,231.25 for delivery charges. |
| | |
| Name: | North East Mud Services Company, LLC |
| Invoice No: | 0000595-IN |
| Claim: | $5,865.00 for salt and delivery charge. |
| | |
| Name: | North East Mud Services Company, LLC |
| Invoice No: | 0000550-IN |
| Claim: | $6,112.80 for delivery charges. |
| | |
| Name: | North East Mud Services Company, LLC |
| Invoice No: | 0000860-IN |
| Claim: | $3,091.29 for delivery charges. |
| | |
| Name: | North East Mud Services Company, LLC |
| Invoice No: | Statement of various invoices |
| Claim: | $19,231.05 |
| | |
| Name: | L&D Well Service |
| Invoice No: | 19023 |
| Claim: | $6,601.90 for wench and water trucks and fuel surcharge. |
| | |
| Name: | East Tennessee Construction |
| Invoice No: | 1616 |
| Claim: | $116,248.08 for Emergency delivery and use of various equipment, including dozers, forklifts, service trucks, track hoes, etc., and various metal and welding supplies. |
| | |
| Name: | Quality Supply |
| Invoice No: | Submitted to East Tennessee Construction |
| Claim: | $2,496.25 for shackles and slings. |
| | |
| Name: | Blowout Tools, Inc. |
| Invoice No: | LA63536 |

| | |
|---|---|
| Claim: | $6,210.70 for possible cost of repair or replacement of tools damaged in fire. |
| Name: | Blowout Tools, Inc. |
| Invoice No: | LA63338 |
| Claim: | $17,745.00 for reimbursement for cost of tools and equipment, such as hydraulic tracking system, hydraulic hand pump, bridle hoses, clamps, and clam shell cutters destroyed in the fire. |
| Name: | Miller Petroleum, Inc. |
| Invoice No: | 0804-003 |
| Claim: | $817.71 for reimbursement for cost of hoses destroyed in the fire. |
| Name: | Robert and Debra Kelly |
| Invoice No: | Submitted through the National Pollution Funds Center |
| Claim: | $5,563.22 for hay, grain, gravel, and labor. |
| Name: | Marlow Volunteer Fire Department |
| Invoice No: | Submitted through the National Pollution Funds Center |
| Claim: | $20,424.00 for labor and use of equipment in fighting and containing fire. |
| Name: | U.S. Government, including the EPA and NPFC |
| Claim: | $1,499,541.85 Federal removal and cleanup costs. |
| Name: | The Penningtons (by Brad Pennington) |
| Claim: | Wildcat teams staged out of their lots to fight the fire and used water from ponds on their properties to fight it. |
| Name: | Clifford N. Henderson, Jr. |
| Claim: | $1,515.30 for explosion damage to Gulfstream trailer |

42. The suits and/or claims against the insured/insureds under the Walden

policy exceed the remaining policy limits of $910,030.76.

43.     The United States Government, including the National Pollution Funds Center and the United States Environmental Protection Agency, has notified Bituminous that it is taking the position that its claims against defendant Walden are entitled to first payment pursuant to the Federal Debt Priority Statute, 31 U.S.C. § 3713, and that it will pursue remedies against Bituminous under the Federal Debt Collection Procedures Act, 28 U.S.C. §3001 if other claims are paid first.

44.     The United States Government, including the National Pollution Funds Center and the United States Environmental Protection Agency, has notified Bituminous that it may pursue its claims against the Walden policy even if no coverage is provided by the policy.

45.     The United States Government, including the National Pollution Funds Center and the United States Environmental Protection Agency, did not originally take this position as it pertains to policies that provide no coverage for its claims, and the following claims were therefore settled:

| | |
|---|---|
| Name: | AT & T |
| Invoice No: | BLST-68-200804-34-0029-JLC |
| Claim: | $5712.21 |
| | |
| Name: | Tate and Angela Lloyd |
| Claim: | $2,222.00 |
| | |
| Name: | Betty Russell |
| Claim: | $2443.00 |
| | |
| Name: | Irene Daugherty |
| Claim: | $2850.00 |
| | |
| Name: | Richard A. Gallaher |
| Claim: | $500.00 |
| | |
| Name: | Richard E. Gallaher |

| | |
|---|---|
| Claim: | $1748.00 |
| Name: | Sharon Diane Powers |
| Claim: | $1300.00 |
| Name: | Miller Petroleum |
| Claim: | $817.71 |
| Name: | State Farm as subrogee of Brett White |
| Claim: | $21,467.05 |
| Name: | Patricia Cox |
| Claim: | $600.00 |
| Name: | Tennessee Farmers as subrogee of Scott Blankenship |
| Claim: | $20,334.00 |
| Name: | S & L Contracting |
| Claim: | $29,975.27 |

46.    Because of the position now taken by the United States Government,

including the National Pollution Funds Center and the United States Environmental

Protection Agency, no further claims can be settled by Bituminous.

47.    The Walden policy provides, with respect to the liability coverage, that

Bituminous shall:

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)**    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

Walden policy, form CG 00 01 12 04, Section I – Coverages.

48. On March 18, 2008, AMWES had the following policies in effect with Bituminous (listing ZTX as an additional named insured):

| Policy Number | Coverage Type | Copy Attached as |
|---|---|---|
| CAP 3 513 226 | Commercial Automobile Liability Policy | Exhibit 2 |
| WC 3 513 227 | Workers Compensation and Employers Liability Policy | Exhibit 3 |
| CLP 3 242 448 | Commercial General Liability Policy | Exhibit 4 |
| CUP 2 580 714 | Commercial Umbrella Policy | Exhibit 5 |
| CLP 2 336 581 | Commercial Pollution Liability Policy | Exhibit 6 |

49. Although defendant AMWES is a Florida corporation with its principal places of business in Florida, Bituminous issued and delivered the foregoing policies to AMWES' location in Kentucky.

50. No coverage would be afforded to defendants AMWES or ZTX under the Commercial Automobile Liability Policy, Policy number CAP 3 513 226, for any of the claims or suits arising for the above-referenced incident. This policy is designed to provide coverage arising from the ownership, maintenance or use of automobiles, in accordance with the terms and conditions of the policy, and there are no claims arising from such usage.

51. There have been no damages, injuries or claims that would be covered under the Workers Compensation and Employers Liability Policy, policy number WC 3 513 227.

52.     No coverage would be afforded to AMWES or ZTX Drilling LLC under the

Commercial General Liability Policy, policy number CLP 3 242 448, for any of the claims

or suits arising from the discharge of oil and gas.

53.     The Commercial General Liability Policy, policy number CLP 3 242 448,

contained the following insuring agreement in form CG 00 01 12 04, which provides as

follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of

Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.**     Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

54.     While Bituminous reserves its right to contest coverage under this policy for any and all reasons, Bituminous believes that questions regarding coverage under this policy for any damages arising from the discharge of oil and gas can be resolved by reference to the following "Total Pollution Exclusion" included by way of endorsement CG 21 49 09 99, which provides as follows:

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2, Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.     Pollution**

**(1)**     'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.

**(2)**     Any loss, cost or expense arising out of any:

**(a)**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants'; or

**(b)**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of 'pollutants'.

55.   This exclusion excludes coverage for any and all "bodily injury" or "property damage" arising from the discharge of pollutants, which would include oil and/or natural gas. All damages, injuries or claims arose from such an event, and thus this exclusion would exclude all damages, injuries or claims.  Again, Bituminous avers that other exclusions may also apply, but will reserve the right to specifically assert those in amendments to this Complaint in the event that coverage under this policy is contested.

56.   No coverage would be afforded to AMWES  or ZTX Drilling LLC under the Commercial Umbrella Policy No. CUP 2 580 714.   The Insuring Agreement of this Umbrella Policy provided as follows:

### AMENDMENT OF INSURING AGREEMENT

**Paragraph 1.   INSURING AGREEMENT** of **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

**1.   INSURING AGREEMENT**

a.   We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' caused by an 'occurrence' which takes place during the policy period and in the 'coverage territory.'  No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under **SECTION II – DEFENSE AND SUPPLEMENTARY PAYMENTS – COVERAGES A and B.**

b.    This insurance applies to 'bodily injury' and 'property damage' only if prior to the policy period, no insured listed under paragraph 1. of **SECTION II – DEFENSE AND SUPPLEMENTARY PAYMENTS – COVERAGES A and B.**

c.    'Bodily injury' or 'property damage' which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of **SECTION III – WHO IS AN INSURED** or any 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, includes any continuation, change or resumption of that 'bodily injury' or 'property damage' after the end of the policy period.

d.    'Bodily injury' or 'property damage' will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of **SECTION III – WHO IS AN INSURED** or any 'employee' authorized by you to give or receive notice of an 'occurrence' or claim;

    (1)    Reports all, or any part, of the 'bodily injury' or 'property damage' to us or any other insurer; or

    (2)    Receives a written or verbal demand or claim for damages because of the 'bodily injury' or 'property damage'; or

    (3)    Becomes aware by any other means that 'bodily injury' or 'property damage' has occurred or has begun to occur.

57.    This Commercial Umbrella Policy contained endorsement CUP 01 72 07 01, which provides:

## POLLUTION EXCLUSION – FOLLOW FORM

It is agreed that this policy does not apply to:

(1)    'Bodily injury,' 'property damage' or 'personal and advertising injury' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time; or

(2)    Any loss, cost, or expense arising out of any:

    (a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants'; or

    (b)    'Claim' or 'suit' on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of 'pollutants."

This exclusion does not apply if insurance for such 'bodily injury,' 'property damage' or 'personal and advertising injury' is provided by 'underlying insurance' at the limits shown in the schedule of 'underlying insurance.' Coverage for such 'bodily injury,' 'property damage' or 'personal and advertising injury' is subject to the same limitations as the 'underlying insurance.'

The definition of 'underlying insurance' does not include insurance coverage afforded by:

> GENERAL LIABILITY – **COVERAGE D. – LIMITED POLLUTION COVERAGE**;

> AUTOMOBILE LIABILITY – ENDORSEMENT CA 9948 – **BROADENED COVERAGE FOR COVERED AUTOS;** or

> AUTOMOBILE LIABILITY – ENDORSEMENT AA 3056 **POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS, TRANSPORTATION OF DESIGNATED POLLUTANTS**.

'Pollutants' means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

58.    The Umbrella policy contains the following definitions:

19.    'Retained limit' means the greater of:

   a.    That amount of 'underlying insurance' applicable to any 'claim' or 'suit,' whether such 'underlying insurance' is collectable or not; or

   b.    The amount of 'self-insured retention' as shown in the Declarations of this policy.

23.    'Ultimate net loss' means that total amount of damages for which the insured is legally liable in payment of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury.' 'Ultimate net loss' may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing. 'Ultimate net loss' shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of 'ultimate net loss' shall not include any expenses incurred by any insured, by us or by any 'underlying insurer.'

24.    'Underlying insurance' means the coverage(s) afforded under insurance policies designated in the schedule of 'underlying insurance' on the Declarations Page of this policy. 'Underlying insurance' also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy. Such other insurance includes any policies issued to renew or replace these policies during the policy period of this insurance that provide:

        a.    At least the same limits of insurance; and

        b.    At least the same coverage.

25.    'Underlying insurer' means any company issuing any policy of 'underlying insurance.'

59.    As has been demonstrated above, there is no insurance afforded by any policy listed on the "Schedule of Underlying Insurance" contained in the Declarations of the Commercial Umbrella Policy for any limit shown. Therefore, the Pollution Exclusion cited above excludes coverage for any and all claims which could be asserted as a result of the event and claims set forth herein. Again, Bituminous reserves the right to assert additional policy provisions and exclusions should this coverage position be contested.

60.    However, on March 18, 2008, Bituminous also had in full force and effect the Commercial Pollution Liability Policy, policy number CLP 2 336 581, insuring defendant AMWES and any others entitled to protection pursuant to the terms and conditions of the insurance policy. Defendant ZTX was an additional named insured on the AMWES policy. A true and exact, certified copy of the policy is attached hereto as Exhibit 6, and is hereinafter referred to as "the ZTX Pollution Liability policy." The policy limits of the ZTX Pollution Liability policy available for satisfaction of judgment or settlement are One Million ($1,000.000.00) Dollars.

61.    The following claims and/or suits have been asserted against ZTX:

| | |
|---|---|
| Name: | Jonathan Vann |
| Date: | Amended Complaint, styled *Vann v. Walden Resources, LLC and ZTX Drilling, LLC*, filed 10/02/2008 in Anderson County Circuit Court under docket number A8LA0229 |
| Claim: | $4.5 million |

| | |
|---|---|
| Name: | United States Government, including the Environmental Protection Agency and the National Pollution Funds Center |
| Invoice No: | E078430 |
| Date: | 9/30/2008 |
| Claim: | $1,499,541.85 for pollution removal/cleanup costs. |

| | |
|---|---|
| Name: | Wild Well Control |
| Date: | 3/31/2008 |
| Claim: | $460,355.78 for blowout and pressure control services, equipment rental, third-party freight mobilization charges |

| | |
|---|---|
| Name: | Wild Well Control |
| Date: | 3/31/2008 |
| Claim: | $61,844.69 for third-party freight and mobilization charges |

| | |
|---|---|
| Name: | Marlow Volunteer Fire Department |
| Date: | 6/13/2008 |
| Claim: | $20,424.00 for labor and use of equipment in fighting and containing fire (tendered by counsel for Walden Resources, LLC, George Buxton, by letter dated 6/18/2008) |

| | |
|---|---|
| Name: | Superior Well Services and Griffith Services, LLC |
| Date: | Complaint, styled *Superior Well Services, and Griffith Services, LLC v. Dan Potts d/b/a Walden Resources, LLC, Walden Resources, LLC, Individually, and ZTX Drilling, LLC*, filed 2/03/2009 in Anderson County Circuit Court under docket number A9LA0050 |
| Claim: | $919,256.00 |

62.    The insuring agreement of the ZTX Pollution Liability Policy provided:

**SECTION I – POLLUTION LIABILITY COVERAGE**

1.    **Insuring Agreement – Bodily Injury And Property Damage Liability**

   a.    We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking

those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'pollution incident' and settle any claim or 'suit that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or 'clean-up costs'.

**b.** This insurance applies to 'bodily injury' and 'property damage' only if:

    **(1)** The 'bodily injury' or 'property damage' is caused by a 'pollution incident' from an 'insured site' or 'waste facility' in the 'coverage territory';

    **(2)** The 'bodily injury' or 'property damage' is caused by a 'pollution incident' that commences on or after the Retroactive Date shown in the Declarations;

    **(3)** The insured's responsibility to pay damages because of 'bodily injury' or 'property damage;' is determined in a 'suit' on the merits in the 'coverage territory' or in a settlement we agree to; and

    **(4)** A claim for damages because of the 'bodily injury' or 'property damage' is first made against any insured, in writing, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Period Option.

**c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

    **(1)** When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

    **(2)** When we make a settlement in accordance with Paragraph **1.a.** above.

All claims for damages because of 'property damage' causing loss to the same person or organization as a result of a 'pollution incident' will be deemed to have been made at the time the first of those claims is made against any insured.

**2.** **Insuring Agreement – Reimbursement Of Mandated Off-Site Clean-Up Costs**

**a.** We will pay for 'clean-up costs' that the insured becomes legally obligated to pay for because of 'environmental damage' to which this insurance applies. We have the right but no the duty to investigate, settle, contest or appeal, at our expense, any obligation asserted against an insured to pay 'clean-up costs'. But the amount we will pay for such 'clean-up costs' is limited as described in Section III – Limits Of Insurance; and

**b.** This insurance applies to 'environmental damage' only if:

**(1)** The 'environmental damage' is caused by a 'pollution incident' that commences on or after the Retroactive Date shown in the Declarations from an 'insured site' or 'waste facility' in the 'coverage territory'; and

**(2)** The insured's obligation to pay 'clean-up costs' because of the 'environmental damage' is asserted under the statutory authority of the government of the United States of American, Canada or any governmental subdivisions of the United States or Canada. Notice asserting such obligation must be first received by you during the policy period.

**3.** No other obligation or liability to pay sums or to perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought;

**c.** Persons or organizations making claims or bringing "suits"; or

**d.** Governmental actions taken with respect to "clean-up costs".

63. The United States Government, including the National Pollution Funds Center and the United States Environmental Protection Agency, has also notified Bituminous that it is taking the position that its claims against defendant ZTX are entitled to first payment pursuant to the Federal Debt Priority Statute, 31 U.S.C. § 3713, and that it will pursue remedies against Bituminous under the Federal Debt Collection Procedures Act, 28 U.S.C. §3001 if other claims are paid first.

64. Because the ZTX Pollution Liability Policy potentially provides coverage for the U.S. Government's claims against ZTX, none of the policy proceeds have been expended in settlement of claims made against ZTX.

65. The ZTX Pollution Liability policy does contain exclusions which would be applicable to portions of various claims, but there are no claims asserted which would not be covered and/or would be excluded in their entirety.

66. The ZTX Pollution Liability policy provides, with respect to the liability coverage, that Bituminous shall:

**a.** We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'pollution incident' and settle any claim or 'suit that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or 'clean-up costs'.

No other obligation or liability to pay sums or to perform acts or services is covered unless explicitly provided for under Supplementary Payments.

AMWES policy, Section I – Pollution Liability Coverage.

67. Bituminous has retained defense counsel to assist Walden and ZTX in the handling of these claims under Reservation of Rights.

68. Bituminous has been requested to pay its policy limits of the Walden policy and the ZTX Pollution Incident policy, and/or allow such policy limits to be used to satisfy some of the claims and/or suits set forth above. The claims and/or suits exceed

the available policy limits. Because Bituminous has been put on notice by the United States Government that it is taking the position that its claims are entitled to first payment from the policies pursuant to the Federal Debt Priority Statute, 31 U.S.C. § 3713, regardless of whether the policies provide coverage for the claims, Bituminous cannot do this without potentially violating the Federal Debt Priority Statute and exposing itself to liability under the Federal Debt Collection Procedures Act, 28 U.S.C. §3001.

      69.    The debt priority statute provides as follows:

**(a)(1)** A claim of the United States Government shall be paid first when –

    **(A)**    a person indebted to the Government is insolvent and –

        **(i)**    the debtor without enough property to pay all debts makes a voluntary assignment of property;

        **(ii)**    property of the debtor, if absent, is attached; or

        **(iii)**    an act of bankruptcy is committed; or

    **(B)**    the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

**(2)**    This subsection does not apply to a case under title 11.

**(b)**    A representative of a person or an estate (except a trustee acting under title 11) paying **any part of a debt** of the person or estate **before paying a claim of the Government** is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713 (emphasis added). The Government has affirmatively taken the position in this case that this provision applies to Bituminous.

      70.    Bituminous had requested that the United States Department of Justice reconsider these issues with respect to the Walden policy to determine if the United States Government could validly assert priority to a policy that provides no coverage for is claims. However, suit was initiated by defendants Vann, Superior and Griffith before a position

was received from the Department of Justice, and Bituminous was compelled to bring this suit to avoid the possibility of an order of judgment inconsistent with the United States Government's position.

71.     Bituminous alleges and avers that an actual controversy exists between itself and the defendants within the meaning of 28 U.S.C. § 2201, and that this Court is vested with the power in the instant case to declare and adjudicate the rights and legal relationships of the parties with reference to the issues raised herein. The federal question raised by these pleadings is also appropriate for the Court's consideration as a justiciable controversy.

## IV. DECLARATORY RELIEF REQUESTED

72.     Bituminous re-avers and re-alleges the allegations of ¶¶ 1-71 of its Complaint.

73.     With respect to the Walden policy, Bituminous requests the following declaratory relief be granted:

a.     That the Court adjudicate and declare that the remaining policy limits available to Walden under the Walden policy are $910,030.76, that being the sum of One Million Dollars less amounts previously expended in settlement of claims; and

b.     That the Court adjudicate and declare that the Walden policy provides no coverage for the claims asserted by the United States Government, the United States Government therefore has no right to any of proceeds from the Walden policy, no priority pursuant to the Federal Debt Priority Statute to any of proceeds from the Walden policy, and no right to pursue its claims against Bituminous pursuant to the Federal Debt Collection Procedures Act.

74. With respect to ZTX, Bituminous requests the following declaratory relief be granted:

a. No coverage would be afforded to AMWES or ZTX Drilling LLC under the Commercial Automobile Liability Policy, Policy number CAP 3 513 226, for any of the claims or suits arising for the above referenced incident;

b. There have been no damages, injuries or claims that would be covered under the Workers Compensation and Employers Liability Policy, policy number WC 3 513 227;

c. No coverage would be afforded to AMWES or ZTX Drilling LLC under the Commercial General Liability Policy, policy number CLP 3 242 448, for any of the claims or suits arising from the discharge of oil and gas;

d. No coverage would be afforded to AMWES or ZTX Drilling LLC under the Commercial Umbrella Policy No. CUP 2 580 714; and

e. The Commercial Pollution Liability Policy, policy number CLP 2 336 581 insuring AMWES and ZTX is the only policy issued by Bituminous that provides any coverage for any of the claims or suits arising from the discharge of oil and gas, and that the policy limits of the ZTX Pollution Liability policy available for satisfaction of judgment or settlement are One Million ($1,000.000.00) Dollars.

75. With respect to both Walden and ZTX, Bituminous requests the Court adjudicate and declare that upon tender of its limits/remaining policy limits into Court, Bituminous will have complied with its obligations under the Walden policy and the ZTX Pollution Incident policy, and would have no duty to defend the interest of any entity entitled to protection under any policy issued to Walden and/or AMWES/ZTX.

## V.  FEDERAL QUESTION PRESENTED

76.  Bituminous re-avers and re-alleges the allegations of ¶¶ 1-75 of its Complaint.

77.  Pursuant to federal statute 28 U.S.C. § 1331, this Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

78.  Bituminous seeks relief in this action pursuant to federal law, specifically the Declaratory Judgment Act, as codified in 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, and the Federal Interpleader Act, as codified in 28 U.S.C. § 1335 and Rule 22 of the Federal Rules of Civil Procedure.

79.  The federal question presented is whether the Debt Priority Statute, 31 U.S.C. § 3713, entitles the United States Government to first payment from the Walden policy proceeds, even though the Walden policy provides no coverage for the claims asserted by the United States Government.

## VI.  INTERPLEADER

80.  Bituminous re-avers and re-alleges the allegations of ¶¶ 1-79 of its Complaint.

81.  As established above, Bituminous cannot make payment to all parties presenting claims without subjecting itself to potential liability because Bituminous has been put on notice by the United States Government that it is taking the position that its claims are entitled to first payment from the policies pursuant to the Federal Debt Priority Statute, 31 U.S.C. § 3713, regardless of whether the policies provide coverage for the claims.

82.     Bituminous, thus, has been presented with multiple claims for recovery. Its policy limits are insufficient to satisfy all demands and/or exposure. It cannot determine which individuals and/or entities should be paid, or the amounts to be paid to each such claimant. The total amount of the claims asserted by the various claimants against Bituminous, and its insureds, exceeds the limit of liability in this case.

83.     Bituminous is, thus, in the position of having multiple claims for relief presented against it, with inadequate resources to fully pay all claims. Accordingly, Bituminous is presented with a threat of multiple litigation and inconsistent results and therefore requests that this Honorable Court grant its interpleader and distribute the remaining limits of the of the Walden policy and the ZTX Pollution Incident policy, to be deposited into Court in accordance with the applicable law and/or the request for division made by the multiple claimants/defendants set forth above.

84.     Pursuant to 28 U.S.C. § 1335, two or more adverse claimants, of diverse citizenship as defined in 28 U.S.C. § 1332, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of the Walden policy and/or the ZTX Pollution Incident policy, and Bituminous has offered the deposit of such money to be made in accordance with Fed. R. Civ. P. 67.

85.     Bituminous will deposit into the Court, the amount of $910,030.76 representing the remaining limits of liability under the Walden policy, pursuant to Fed. R. Civ. P. 67 upon entry of an appropriate Order by this Court as required by LR67.1.

86.     Bituminous will deposit into the Court, the amount of One Million Dollars, representing the policy limits of the ZTX Pollution Incident policy, pursuant to Fed. R. Civ. P. 67 upon entry of an appropriate Order by this Court as required by LR67.1,

87.    The Walden policy provides, with respect to the liability coverage, that

Bituminous shall:

> **a.**    We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies.  We will have the right and duty to defend
> the insured against any "suit" seeking those damages.  However, we will
> have no duty to defend the insured against any "suit" seeking damages for
> "bodily injury" or "property damage" to which this insurance does not
> apply.  We may, at our discretion, investigate any "occurrence" and settle
> any claim or "suit" that may result.  But:
>
> **(1)**    The amount we will pay for damages is limited as described in
> Section III – Limits Of Insurance; and
>
> **(2)**    Our right and duty to defend ends when we have used up the
> applicable limit of insurance in the payment of judgments or
> settlements under Coverages A or B or medical expenses under
> Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is
> covered unless explicitly provided for under Supplementary Payments –
> Coverages **A** and **B.**

Walden policy, form CG 00 01 12 04, Section I – Coverages.

88.    The ZTX Pollution Incident policy provides, with respect to the liability

coverage, that Bituminous shall:

> **a.**    We will pay those sums that the insured becomes legally obligated
> to pay as compensatory damages because of 'bodily injury' or 'property
> damage' to which this insurance applies.  We will have the right and duty
> to defend the insured against any 'suit' seeking those damages.  However,
> we will have no duty to defend the insured against any 'suit' seeking
> damages for 'bodily injury' or 'property damage' to which this insurance
> does not apply.   We may, at our discretion, investigate any 'pollution
> incident' and settle any claim or 'suit that may result.  But:
>
> **(1)**    The amount we will pay for damages is limited as described
> in Section **III** – Limits Of Insurance; and
>
> **(2)**    Our right and duty to defend ends when we have used up
> the applicable limit of insurance in the payment of
> judgments, settlements or 'clean-up costs'.

No other obligation or liability to pay sums or to perform acts or services is covered unless explicitly provided for under Supplementary Payments.

AMWES policy, Section I – Pollution Liability Coverage.

89.     Bituminous seeks the declaration and ruling that, upon tender of its remaining policy limits into Court, it will have complied with its obligations under the Walden policy and any policy insuring AMWES and/or ZTX, and would have no duty to defend the interest of any entity entitled to protection in any further litigation.

90.     Upon such deposit, pursuant to Fed. R. Civ. P. 67, Bituminous would no longer be an interested party to the method of distribution, and would request that this Court discharge it from the interpleader action.

## VII. INJUNCTIVE RELIEF

91.     Bituminous re-asserts and re-alleges ¶¶ 1-90 of its Complaint.

92.     Each defendant in this case has presented and/or has a claim or cause of action and/or has made demand upon Bituminous and/or is entitled to benefits under the Walden policy and/or the ZTX Pollution Incident policy.

93.     By virtue of the Interpleader and Declaratory Judgment Action, Bituminous has satisfied any and all obligations it could have to the defendants and requests a permanent injunction prohibiting them from instituting any legal action against Bituminous for recovery of any monies as a result of the subject well spill and resulting fire and explosion.

**WHEREFORE, Bituminous Casualty Corporation prays as follows:**

A.     That the defendants be required to answer and appear in;

B.     That the Court adjudicate and declare that the remaining policy limits available to Walden under the Walden policy are $910,030.76, that being the sum of

One Million Dollars less amounts previously expended in settlement of claims;

C.     That the Court adjudicate and declare that the Walden policy provides no coverage for the claims asserted by the United States Government, the United States Government therefore has no right to any of proceeds from the Walden policy, no priority pursuant to the Federal Debt Priority Statute to any of proceeds from the Walden policy, and no right to pursue its claims against Bituminous pursuant to the Federal Debt Collection Procedures Act;

D.     That the Court adjudicate and declare that no coverage would be afforded to AMWES or ZTX Drilling LLC under the Commercial Automobile Liability Policy, Policy number CAP 3 513 226, for any of the claims or suits arising for the above referenced incident;

E.     That the Court adjudicate and declare that there have been no damages, injuries or claims that would be covered under the Workers Compensation and Employers Liability Policy, policy number WC 3 513 227;

F.     That the Court adjudicate and declare that no coverage would be afforded to AMWES or ZTX Drilling LLC under the Commercial General Liability Policy, policy number CLP 3 242 448, for any of the claims or suits arising from the discharge of oil and gas;

G.     That the Court adjudicate and declare that no coverage would be afforded to AMWES or ZTX Drilling LLC under the Commercial Umbrella Policy No. CUP 2 580 714; and

H.     That the Court adjudicate and declare that the Commercial Pollution Liability Policy, policy number CLP 2 336 581 insuring AMWES and ZTX is the only

policy issued by Bituminous that provides any coverage for any of the claims or suits arising from the discharge of oil and gas, and that the policy limits of the ZTX Pollution Liability policy available for satisfaction of judgment or settlement are One Million ($1,000.000.00) Dollars.

I.     That the Court adjudicate and declare that upon tender of its limits/remaining policy limits into Court, Bituminous will have complied with its obligations under the Walden policy and the ZTX Pollution Incident policy, and would have no duty to defend the interest of any entity entitled to protection under any policy issued to Walden and/or AMWES/ZTX;

J.     That the Court resolve the Federal Question presented, that being whether the Debt Priority Statute, 31 U.S.C. § 3713, entitles the United States Government to first payment from the Walden policy proceeds, even though the Walden policy provides no coverage for the claims asserted by the United States Government;

K.     That this Court, upon appearance of all defendants, enter an Order, pursuant to Fed. R. Civ. P. 67, permitting the deposit of the remaining policy limits of the Walden policy and the policy limits of the ZTX Pollution Incident policy with the clerk of the court for investment;

L.     That this Court, upon appearance of all the defendants and entry of the afore-mentioned Order, discharge Bituminous from any obligation under the Walden policy and the AMWES/ZTX policies, and distribute the remaining policy proceeds following its discharge, in accordance with applicable law and/or any agreement made by the remaining defendants;

M.     That Bituminous be dismissed and discharged from this action;

N.     That Bituminous be granted permanent injunction prohibiting any of the defendants from bringing legal action to recover any proceeds from the Walden policy and/or any policy issued to AMWES, as a result of the subject well spill and resulting fire and explosion.

O.     That no costs be taxed to Bituminous; and

P.     For such other further and legal equitable relief as this Court deems just and proper.


Respectfully submitted,


**PARKS F. CHASTAIN**
Registration No. 13744
Attorney for Plaintiff, Bituminous Casualty Corporation

**BREWER, KRAUSE, BROOKS,**
**CHASTAIN & BURROW, PLLC**
P. O. Box 23890
Nashville, TN  37202-3890
(615) 256-8787