UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BITUMINOUS CASUALTY              )
CORPORATION,                     )
                                 )
          Plaintiff,             )
v.                               )      No.:   3:09-CV-60
                                 )             (VARLAN/SHIRLEY)
WALDEN RESOURCES, LLC, et al.,   )
                                 )
          Defendants.            )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on Defendants National Pollution Funds Center

("NPFC") and the United States Environmental Protection Agency's ("EPA's"; collectively,

the "federal defendants'") Motion to Dismiss [Doc. 46]. Plaintiff Bituminous Casualty

Corporation ("Bituminous") has filed a Response to Motion to Dismiss [Doc. 51]. The

federal defendants have filed a Reply Memorandum in Support of Motion to Dismiss [Doc.

56]. This motion is now ripe for the Court's consideration.

## I.    Background

On March 18, 2008, at approximately 1:00 p.m., a blowout preventer failed at an oil

well known as "Partin 5"[1] in Anderson County, Tennessee [Doc. 1, ¶ 31]. This failure

resulted in an oil and natural gas spill at Partin 5 [*Id.*]. A host of persons and organizations

responded to this spill, providing supplies and services in an effort to clean it up [*Id.*]. While

this cleanup work was being performed, a vehicle sparked a fire that produced a large

_____

[1]This is misspelled as "Parten 5" in Bituminous's complaint. *See* Doc. 1, ¶ 31.

explosion [*Id.*]. A number of other persons and organizations responded to extinguish the fire created by the explosion, but not before property in the surrounding area was damaged by the spill, fire, and/or explosion (referred to herein as the "Partin 5 incident") [*Id.*].

Defendant Daniel Potts was the owner and operator of defendant corporation Walden Resources, LLC ("Walden") [*Id.*]. Potts also owned an individual interest in Partin 5, along with oil and gas leases and rights to the property on which the well was located [*Id.*]. Walden had entered into a contract with defendant ZTX Drilling, LLC ("ZTX") to drill Partin 5 when the blowout preventer failure occurred [*Id.*].

Bituminous is the liability insurance provider for Walden and ZTX [*Id.*]. On the date of the Partin 5 incident, Bituminous had in full force and effect a policy insuring "Walden and any others entitled to protection pursuant to the terms and conditions of the insurance policy" (the "Walden policy") [*Id.*, ¶ 34]. This policy contained a "Total Pollution Exclusion with a Hostile Fire Exception" that Bituminous alleges exempts many of the claims advanced against it as a result of the Partin 5 incident [*Id.*, ¶¶ 37-39]. A number of persons and organizations, including the federal defendants, have advanced claims on this policy [*Id.*, ¶ 41]. Bituminous has already settled some claims on this policy, in the amount of $89,969.24 [*Id.*, ¶ 45]. Outstanding claims exceed the remaining policy limit of $910,030.76 [*Id.*, ¶ 42].

After Bituminous settled these initial claims, the federal defendants notified Bituminous that their own claims against the Walden policy were entitled to first payment

2

pursuant to the Federal Debt Priority Statute, 31 U.S.C. § 3713 [*Id.*, ¶ 43].[2] Bituminous's complaint alleges that the federal defendants have notified Bituminous that they will pursue remedies against Bituminous under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq.* if claims other than those submitted by the government are paid first [*Id.*, ¶ 43; *see also* Doc. 51-1]. Bituminous further alleges that because of the position taken by the federal defendants, Bituminous is incapable of settling claims under the Walden policy, other than those submitted by the government, without potentially exposing itself to liability under 31 U.S.C. § 3713 and 28 U.S.C. § 3001, *et seq.* [Doc. 1, ¶ 46].

In addition to the Walden policy, Bituminous had five other policies in effect on the date of the incident, which were taken out by defendant AMWES Exploration, LLC ("AMWES"). These included a commercial automobile liability policy; a workers' compensation and employer's liability policy; a commercial general liability policy; a commercial umbrella policy; and a commercial pollution liability policy [*Id.*, ¶ 48]. ZTX was listed as an additional named insured on each policy. [*Id.*] Bituminous alleges that no coverage is afforded to AMWES or ZTX under the commercial automobile liability policy in connection with the Partin 5 incident, because that policy is designed to provide coverage arising only from the ownership, maintenance, or use of automobiles [*Id.*, ¶ 50]. Bituminous also alleges that no coverage is afforded under the workers' compensation and employer's

---

[2] 31 U.S.C. § 3713(b) provides that "[a] representative of a person . . . paying any part of a debt of the person . . . before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."

liability policy [*Id.*, ¶ 51]. And Bituminous alleges that no coverage is afforded under the commercial general liability policy, because of that policy's "Total Pollution Exclusion Endorsement," which exempts coverage for any "bodily injury" or "property damage" arising from the discharge of pollutants, including oil and natural gas [*Id.*, ¶¶ 56-59]. Finally, Bituminous alleges that no coverage is afforded under the commercial umbrella policy because of that policy's "Pollution Exclusion" [*Id.*, ¶¶ 52-55].

Bituminous concedes, however, that the commercial pollution liability policy potentially provides coverage for the federal defendants' claims against ZTX [*Id.*, ¶¶ 60-68]. Bituminous further concedes that, while this policy "does contain exclusions which would be applicable to portions of various claims," "there are no claims asserted which would not be covered and/or would be excluded in their entirety" [*Id.*, ¶ 65]. A number of persons and organizations have advanced claims on this policy, including the federal defendants [*Id.*, ¶ 61]. As with the Walden policy, the federal defendants have notified Bituminous that their own claims against the commercial pollution liability policy are entitled to first payment pursuant to the Federal Debt Priority Statute [*Id.*, ¶ 63]. The complaint also alleges that the federal defendants notified Bituminous that they will pursue remedies against Bituminous under the Federal Debt Collection Procedures Act if claims other than those submitted by the government are paid first [*Id.*; *see also* Doc. 51-1]. Again, and as with the Walden policy, Bituminous alleges that because of the position taken by the federal defendants, Bituminous is incapable of settling claims under the commercial pollution liability policy, other than

4

those submitted by the government, without potentially exposing itself to liability under 31 U.S.C. § 3713 and 28 U.S.C. § 3001, *et seq.* [Doc. 1, ¶¶ 68-69].

Bituminous avers that it requested that the United States Department of Justice (the "Justice Department") reconsider the claims of the federal defendants with respect to the Walden policy to determine whether the government "could validly assert priority to a policy that provides no coverage for is [*sic*] claims" [*Id.*, ¶ 70]. Bituminous further avers, however, that defendants Jonathan D. Vann, Superior Well Services, Inc. ("Superior"), and Griffith Services, LLC ("Griffith") instituted suit prior to Bituminous's receipt of a determination from the Justice Department, and that Bituminous was therefore compelled to bring this suit in order to avoid the possibility of a judgment inconsistent with the position of the federal government [*Id.*, ¶ 70].

With respect to the Walden policy, Bituminous seeks the following forms of relief:

(1) That this Court adjudicate and declare that the remaining policy limit available to Walden is $910,030.76; and

(2) That this Court adjudicate and declare that the policy provides no coverage for the claims asserted by the federal government, and that the federal government therefore has no right to any of the proceeds from this policy, no priority to any of those proceeds pursuant to the Federal Debt Priority Statute, and no right to pursue its claims against Bituminous pursuant to the Federal Debt Collection Procedures Act.

[*Id.*, ¶ 73]. With respect to ZTX, Bituminous seeks the following forms of relief:

(1) That no coverage be afforded to AMWES or ZTX under the commercial automobile liability policy for any of the claims or suits arising out of the Partin 5 incident;

(2)     That no coverage be afforded under the workers' compensation and employer's liability policy for damages, injuries, or claims arising from the Partin 5 incident;

(3)     That no coverage be afforded to AMWES or ZTX under the commercial general liability policy for any of the claims or suits arising out of the Partin 5 incident;

(4)     That no coverage be afforded to AMWES or ZTX under the commercial umbrella policy; and

(5)     That the commercial pollution liability policy be declared the only policy that provides any coverage for claims or suits arising from the Partin 5 incident, and that the limit of this policy available for the satisfaction of judgment or settlement is $1,000,000.00.

[*Id.*, ¶ 74]. Finally, with respect to both Walden and ZTX, Bituminous requests that this Court adjudicate and declare that upon tender of its remaining policy limit into this Court, Bituminous will have complied with its obligations under both the Walden policy and the commercial pollution liability policy, and will have no duty to defend the interests of any entity entitled to protection under any policy issued by Bituminous to Walden, AMWES, or ZTX [*Id.*, ¶ 75].

Bituminous also requests that this Court grant interpleader pursuant to 28 U.S.C. § 1335(a), which provides that:

The district courts shall have original jurisdiction of any civil action of interpleader . . . filed by any . . . corporation . . . having issued a . . . policy of insurance, or other instrument of value or amount of $500 or more . . . if [t]wo or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property . . . ; and if [] the plaintiff has deposited such money or property . . . into the registry of the court, there to abide the judgment of the court . . . .

6

[Doc. 1, ¶¶ 81-90]. Bituminous alleges that it has been "presented with multiple claims for recovery"; that its "policy limits are insufficient to satisfy all demands and/or exposure"; that it "cannot determine which individuals and/or entities should be paid, or the amounts to be paid to each such claimant"; and that the "total amount of the claims asserted by the various claimants against Bituminous, and its insureds, exceeds the limit of liability in this case" [*Id.*, ¶ 82]. Bituminous thus proposes to deposit into the Court the amount remaining under both the Walden policy and the commercial pollution liability policy, to be distributed to the claimants under the applicable law [*Id.*, ¶ 83]. Bituminous further seeks a declaration that, upon tender of its remaining policy limits into this Court, it will have complied with its obligations under the Walden and the commercial pollution liability policies, and will have no duty to defend the interest of any entity entitled to protection in any further litigation [*Id.*, ¶ 89]. Bituminous requests that the Court then discharge it from the interpleader action [*Id.*, ¶ 90].

Finally, Bituminous requests injunctive relief that mirrors its interpleader request above, and that also includes the grant of a permanent injunction prohibiting the defendants in this case from bringing legal action to recover proceeds from either the Walden or the commercial pollution liability policy as a result of the Partin 5 incident [*Id.*, ¶¶ 91-93].

On April 30, 2009, the federal defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), and an accompanying memorandum, arguing that no applicable waiver of sovereign immunity existed to allow Bituminous to assert claims against them [Docs. 46, 47]. As a result, they argue, this Court lacks subject matter

7

jurisdiction over those claims [Doc. 47]. Bituminous filed a response to this motion on May 20, 2009, arguing that the federal defendants waived sovereign immunity under either 28 U.S.C. § 2410[3] or 5 U.S.C. § 702 [Doc. 51].[4] Defendants Lexington Insurance Company ("Lexington"), Superior, and Griffith filed a response on May 20, 2009 adopting Bituminous's response filed on the same day, and setting forth arguments similar to those made by Bituminous in its response [Doc. 53]. Defendant Vann filed a response the same day adopting both Bituminous's response, and the response filed by Lexington, Superior, and Griffith [Doc. 52]. Defendants Walden and Potts also filed a response the same day adopting both Bituminous's response, and the response filed by Lexington, Superior, Inc., and Griffith [Doc. 54]. The federal defendants filed a reply on May 28, 2009, arguing that neither 28 U.S.C. § 2410 nor 5 U.S.C. § 702 waives sovereign immunity.

The Court has considered the motion to dismiss, the responses in opposition from the various parties, and the reply. For the reasons set forth herein, the motion to dismiss will be granted.

---

[3]28 U.S.C. § 2410(a) provides that "the United States may be named a party in any civil action or suit in any district court . . . of interpleader or in the nature of interpleader with respect to [] real or personal property on which the United States has or claims a mortgage or other lien."

[4]5 U.S.C. § 702 provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof," and that "[t]he United States may be named as a defendant in any such action."

## II.     Standard of Review

When considering a motion to dismiss, the allegations in the complaint will be construed broadly and liberally in conformity with Federal Rules of Civil Procedure 8(f) and 12(b)(1).  All well-pleaded facts in the complaint are taken as true, and the Court will draw all reasonable inferences in favor of the pleader from the underlying facts.  *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997).

## III.     Analysis

The Court must consider two related issues underlying this motion: first, whether Bituminous can establish subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, or 1335 for its claims against the federal defendants; and second, even if Bituminous can do so, whether the federal defendants are nevertheless immune from suit on the basis of sovereign immunity.  The Court considers these issues below in turn.

### A.     Subject Matter Jurisdiction Under 28 U.S.C. §§ 1331, 1332, or 1335

Federal Rule of Civil Procedure 8(a) requires that a pleading stating a claim for relief contain, among other elements, "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no jurisdictional support."  In its complaint, Bituminous asserts jurisdiction on the basis of three federal statutes: 28 U.S.C. § 1331, which governs federal question jurisdiction;[5] 28 U.S.C. § 1332,

---

[5]Bituminous actually states in its pleading that "[j]urisdiction exists in this Court pursuant to the provisions of 28 U.S.C. § 133, 1332 and 1335" [Doc. 1, ¶ 33].  Based upon averments made elsewhere in the pleadings, this Court presumes that Bituminous intended "133" to read "1331."

9

which governs diversity jurisdiction; and 28 U.S.C. § 1335, which governs interpleader [Doc. 1, ¶ 33].

Of course, Bituminous cannot establish subject matter jurisdiction by citing to either § 1331 or § 1332 alone. Bituminous must also plead a cause of action to establish subject matter jurisdiction. *See, e.g.*, *Bush v. State Indus., Inc.*, 599 F.2d 780, 784-85 (6th Cir. 1979) (right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's cause of action to bring a case within § 1331); *see also Jones v. City of Carlisle*, 3 F.3d 945, 950-51 (6th Cir. 1993) (noting that a plaintiff must plead a cause of action to satisfy the requirements of diversity jurisdiction). Bituminous has not done so in this case.

Nevertheless, Bituminous can still likely establish subject matter jurisdiction under 28 U.S.C. § 1335. *Shelter Mut. Ins. v. Gregory*, 555 F. Supp. 2d 922 (M.D. Tenn. 2008) is instructive on this point. The defendant in *Shelter*, Robert Gregory, owned a home in Davidson County, Tennessee, that was damaged in a fire. *Id.* at 924. The home was insured under a policy Gregory had taken out with the plaintiff, Shelter Mutual Insurance ("Shelter"), in the amount of $173,000.00. *Id.* After the fire, Gregory submitted a claim to Shelter for the full amount of the policy, but when Shelter began to investigate his claim, it discovered that the Internal Revenue Service (the "IRS") had filed a Notice of Federal Tax Lien with the Register of Deeds for Davidson County against all property and rights belonging to Gregory because of Gregory's failure to pay taxes in 1997, 1998, 1999, and 2001. *Id.* Conceding that the total policy amount was payable, but unsure whether it should be paid to Gregory or to

10

the IRS, Shelter brought an interpleader action against Gregory and the United States to resolve the adverse claims to the property. *Id.*

While the district court in *Shelter* noted that federal question jurisdiction "must generally stem from a federal question established in a well-pleaded complaint," *Id.* at 928 (citing *Miller v. Norfolk and W. Ry. Co.*, 834 F.2d 556, 563 (6th Cir. 1997)), the court also noted that "federal question jurisdiction can exist in [interpleader] actions even when a federal question is absent on the face of a well-pleaded complaint if such jurisdiction would have existed in a coercive action by the defendant." *Shelter*, 555 F. Supp. 2d at 928. "In other words," the court held, "an interpleader action may stake subject matter jurisdiction on 'a defense to a claim that would raise a federal question and that defendant could have asserted in a coercive action.'" *Id.* (quoting *Bell & Beckwith v. United States*, 766 F.2d 910, 912 (6th Cir. 1985)).

The district court in *Shelter* then went one step further, finding that discussion of a "coercive action" by the defendant in the case was not a "mere hypothetical exercise," because the government had actually filed a counterclaim against Shelter and a cross-claim against Gregory seeking to obtain the proceeds of Gregory's insurance policy. *Shelter*, 555 F. Supp. 2d at 928. The court concluded on that basis that it had federal question jurisdiction over Shelter's interpleader claim. *Id.* at 928-29.

The logic behind the *Shelter* decision applies in equal force to the interpleader question in the instant case. No federal question appears on the face of Bituminous's complaint, as the federal defendants correctly point out. But the federal defendants'

11

submission of a claim against the Walden and the commercial pollution liability policies, coupled with their threats to seek satisfaction under 31 U.S.C. § 3713 and 28 U.S.C. § 3001, *et seq.* if their claims are not paid first, operate as "coercive action" for the purposes of interpleader just as the tax lien in the *Gregory* case did.[6]

For these reasons, Bituminous can establish subject matter jurisdiction for its claims against the federal government under 28 U.S.C. § 1335. However, "[a]n interpleader proceeding" by itself "does not establish jurisdiction" when the government is involved. *Kentucky v. Laurel County*, 805 F.2d 628, 636 (6th Cir. 1986). That is because "[t]he United States may not be required to interplead when it has not waived its sovereign immunity." *Id.* (quoting 7 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1721, at 624 (2d ed. 1986)). For the reasons that follow, no valid waiver of sovereign immunity exists at this stage that would permit Bituminous to interplead the federal defendants.

### B.      Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Munaco v. United States*, 522 F.3d 651, 652-53 (6th Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "This principle extends to agencies of the United States as well, which are immune absent

---

[6]The Court notes one important difference between the *Shelter* case and the instant case: in *Shelter*, the IRS had commenced an action to enforce a tax lien. In the instant case, no such lien exists, as discussed *infra* Part III.B.1. For the sake of argument, however, the Court assumes that the actions of the federal defendants in this case rise to the level of "coercive action" for the purposes of interpleader. The question need not be answered definitively, however, because of this Court's finding on the sovereign immunity issue, *see infra* Part III.B.

a showing of a waiver of sovereign immunity."[7] *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993). Where, as here, subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Bituminous has cited to several federal statutes in its complaint, none of which alone can act as a waiver of sovereign immunity. *See, e.g.*, *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007) (noting that because plaintiff had named the secretary of the U.S. Department of Housing and Urban Development in his official capacity in his complaint, plaintiff had to identify a waiver of sovereign immunity, as well as invoke 28 U.S.C. § 1331, in order to proceed); *see also Dover v. United States*, 2008 WL 2704446, at *1 (E.D. Tenn. July 3, 2008) ("The Declaratory Judgment Act [codified at 28 U.S.C. § 2201, *et seq.*] does not provide a waiver of sovereign immunity.")).

Two federal statutes–neither of which Bituminous cites in its complaint–could potentially waive the federal defendants' sovereign immunity: 28 U.S.C. § 2410 and 5 U.S.C. §§ 701, *et seq.* As explained below, however, neither of these statutes can serve as a valid waiver of sovereign immunity in this case.

---

[7]The federal defendants are both agencies of the federal government [*see* Doc. 1].

13

### 1.    28 U.S.C. § 2410

28 U.S.C. § 2410(a) provides that "the United States may be named a party in any civil action or suit in any district court . . . of interpleader or in the nature of interpleader with respect to [] real or personal property on which the United States has or claims a mortgage or other lien."   The federal defendants argue in their motion to dismiss that, even if Bituminous had relied upon § 2410(a) in its complaint, this statute could not serve as an effective waiver of sovereign immunity because the claims of the federal defendants do not amount to a "lien" under the statute [Doc. 46].[8]  Bituminous argues in its response that § 2410(a) does waive sovereign immunity because these claims are "liens" under the meaning of the statute [Doc. 51].

The paucity of Sixth Circuit precedent on the question of whether claims like those of the federal defendants constitute a "lien" under § 2410(a) is reflected in the motion papers: neither party cites to a Sixth Circuit case that has addressed the issue [*see* Docs. 46, 47, 51, 56].  Courts addressing the issue outside the Sixth Circuit, however, have uniformly rejected the argument that the mere assertion by the federal government of a claim to insurance proceeds amounts to a "lien" for the purposes of § 2410(a).  *See Coastal Rehab. Servs., P.A. v. Cooper*, 255 F. Supp. 2d 556, 560-61 (D. S.C. 2003) (rejecting characterization of federal government's preexisting civil claims against party instituting interpleader action as "liens"

_____

[8]The Court notes that it could dismiss Bituminous's claims against the federal defendants solely on the grounds that Bituminous failed to allege a valid waiver of sovereign immunity in its pleadings.  Notwithstanding the availability of this basis for dismissal, however, the Court chooses instead to proceed directly to consideration of the sovereign immunity issue.

14

under § 2410(a)); *U.S. Fid. & Guar. Co. v. Pierce Waste Oil Serv., Inc.*, 806 F. Supp. 832, 833-35 (E.D. Mo. Sep. 15, 1992) (rejecting characterization of claim for reimbursement by government of cleanup costs under insurance policy as lien under § 2410(a)); *Superior Beverage Co. v. Ohio*, 324 F. Supp. 564, 566-67 (N.D. Ohio 1971) ("Use of the word 'lien' [in § 2410(a)], given its usual meaning [of 'a legal claim or charge on property, either real or personal, as security for the payment of some debt or obligation'], cannot encompass a claimed contractual interest to participate in insurance proceeds") (quoting 53 C.J.S. *Liens* § 1 (1948)).

"When the federal government has waived its immunity and consented to suit, we strictly construe any waiver, and the putative plaintiff must abide the terms of the consent." *Munaco*, 522 F.3d at 652-53. "Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with. *Rock Island, A. & L. R. Co. v. United States*, 254 U.S. 141, 142 (1920) (Holmes, J.). Bituminous has failed to establish that the federal defendants' claim to insurance proceeds under either the Walden or the commercial pollution liability policy amounts to a lien for the purposes of § 2410. This is particularly so given the requirement that this Court construe that provision strictly. As such, § 2410 cannot serve as a waiver of sovereign immunity permitting interpleader of the federal defendants.

### 2.    5 U.S.C. §§ 701, *et seq.*

The Administrative Procedures Act (the "APA") is codified at 5 U.S.C. §§ 701, *et seq.* 5 U.S.C. § 702 provides that "[a] person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The statute further provides that "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency . . . acted. . . in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States." *Id.*

Bituminous does not allege on the face of its complaint that the APA waives the federal defendants' sovereign immunity in the instant case [*see* Doc. 1.] Nor do the federal defendants raise this issue in their motion to dismiss [*see* Doc. 47]. The issue does not appear until Bituminous's response to the motion to dismiss, in which Bituminous argues that the APA waives sovereign immunity "because this is a suit challenging action by the Federal Defendants that has adversely effected [*sic*] other parties" [Doc. 51]. In their reply, the federal defendants argue that the APA does not waive sovereign immunity because their actions are not "final" for purposes of the statute; because their actions do not constitute "aggrievement" for purposes of the statute; and because Bituminous is not without another adequate remedy in court [Doc. 56]. This Court finds that the actions of the federal defendants are not "final" for purposes of the statute. As a result, the APA cannot serve as a waiver of sovereign immunity in this case.

"[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. "[T]wo conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process, *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quoting *Chicago*

16

*& S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)), meaning that the

action "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178.

Second, "the action must be one by which 'rights or obligations have been determined,' or

from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 178 (quoting *Port of

Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

*See also Bangura v. Hansen*, 434 F.3d 487, 500-01 (6th Cir. 2006) (applying two-step

framework from *Bennett*).

Determining whether there is "final" agency action here requires that the Court

examine in detail the letters issued by the federal agencies in connection with this case.

These include the following, as provided by Bituminous:

> (1)    April 1, 2008 letter notifying Walden and Potts of their potential liability for the Partin 5 incident;
>
> (2)    April 1, 2008 letter notifying Walden and Potts of their potential obligations under 31 U.S.C. § 3713 and 28 U.S.C. § 3001, *et seq*.;
>
> (3)    April 11, 2008 letter notifying ZTX Corporation and Steve Yates of their potential obligations under 31 U.S.C. § 3713 and 28 U.S.C. § 3001, *et seq*.;
>
> (4)    June 25, 2008 letter to ZTX[9] and Darrell Saunders requesting a copy of ZTX's insurance coverage for pollution and general liability;
>
> (5)    September 30, 2008 follow-up letter to Walden and Potts notifying them of their potential liability for the Partin 5 incident;[10]

---

[9]ZTX is misidentified in this letter as "ZTX Drilling Inc., LLC" rather than "ZTX Drilling, LLC."

[10]This letter is addressed to Walden and Potts, but begins with "Mr. Yates." The Court treats this letter as one directed to Walden and Potts.

(6)     September 30, 2008 follow-up letter to ZTX Corporation and Yates notifying them of their potential liability for the Partin 5 incident;

(7)     February 6, 2009 follow-up letter to ZTX and Yates notifying them of their potential liability for the Partin 5 incident; and a

(8)     February 26, 2009 letter to Denenberg Tuffley, PLLC notifying that firm of the potential application of 31 U.S.C. § 3713 and 28 U.S.C. § 3001, *et seq*. in the instant case.

[Doc. 51-1].

All eight of the above letters appear on the letterhead of the U.S. Department of Homeland Security, the U.S. Coast Guard, and the NPFC [*see id.*]. All but the February 26 letter, moreover, are from Miguel Bella, identified as the Regional Director of the U.S. Coast Guard [*see id.*]. The February 26 letter is from Michelle Bas, identified as the "LCDR" of the U.S. Coast Guard [*see id.*]. The Court examines each of these letters in turn.

The first April 1, 2008 letter to Walden and Potts cannot be considered final agency action. The letter indicates to its recipients only that they "may be liable" as responsible parties for cleanup costs, and that the case "may" be forwarded to the Department of Justice for potential litigation [*Id.*]. It also notes that "if" the agency determines that Walden and Potts are indebted to the U.S., the agency "may" forward any unpaid debt to the Department of the Treasury's Debt Management Services (the "DMS") for collection [*Id.*]. This letter represents not final agency action, but merely an explanation by the agency to the letter's recipients of the possible consequences the recipients might suffer if they do not comply with federal law.

18

Nor can the second April 1, 2008 letter to Walden and Potts, or the April 11, 2008 letter to ZTX Corporation and Yates, be considered final agency action. Those letters advise their respective recipients of the rights and liabilities of owners and operators of facilities suffering failures to which federal agencies have responded and for which those agencies have expended resources to address [*Id.*]. Those letters also identify for their respective recipients the applicable statutes under which federal agencies may seek recovery for their efforts, advise the recipients not to violate those statutes, and recommend that stop payments be issued on any funds released in violation of the applicable statutes or that those funds be returned to the appropriate party if already expended [*Id.*]. Finally, those letters express the interest of the agency in "working with" the recipients in order to satisfy the requirements of federal law [*Id.*]. Like the first April 1, 2008 letter, the second April 1, 2008 letter and the April 11, 2008 letter represent not final agency action, but merely an explanation of the applicable law to their respective recipients.

Nor can the June 25, 2008 letter be considered final agency action. It is instead simply a request sent to Darrell Saunders, as counsel to ZTX, for a copy of ZTX's insurance coverage for pollution and general liability. Far from being final agency action, it is doubtful that this letter constitutes "action" at all, *see* 5 U.S.C. § 551(13) (defining "agency action" as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof").

Nor can the next three letters be considered final agency action, although the determination here is more difficult to make. The September 30, 2008 letter to Walden and

19

Potts is a "follow-up" to the letter sent to Walden and Potts on April 11, 2008 [Doc. 51-1]. The letter states that "based on the information" the NPFC had received in the case, the NPFC "believe[d]" that Walden and Potts were liable for the costs incurred by the federal defendants [*Id.*]. A bill of costs, along with supporting documentation, were enclosed with the letter for review by the recipients [*Id.*]. The recipients were then advised that they would be charged interest if they did not pay in full [*Id.*]. They were also advised that any unpaid debt would be referred either to the Justice Department for litigation, or the DMS for collection [*Id.*]. The September 30, 2008 and the February 6, 2009 letters to ZTX and Yates are substantively identical to the September 30, 2008 letter to Walden and Potts [*Id.*].

As previously noted, the first *Bennett* factor in determining the finality of agency action is whether the action marks the "consummation" of the agency's decisionmaking process, and is not "of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78. "[A]gency letters based on hypothetical facts or facts submitted to the agency, as opposed to fact-findings made by the agency, are classically non-final for this reason." *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 639 (6th Cir. 2004).

Consideration of these principles, as well as of the closely analogous case of *Town of Smyrna v. U.S. Army Corps of Eng'rs*, 517 F. Supp. 2d 1026 (M.D. Tenn. 2007), persuade this Court that these letters do satisfy the first factor of the *Bennett* test. In *Smyrna*, the Court confronted the question of whether a letter sent by the U.S. Army Corps of Engineers (the "Corps") notifying the Town of Smyrna that its debt to the United States was delinquent, that the town was in noncompliance with the terms of a water use easement, and that the

20

easement was thus subject to termination by the government, constituted final agency action under 5 U.S.C. § 704. *Id.* at 1032-33. The *Smyrna* Court found this letter to reflect the "consummation" of the Corps' decisionmaking process, because its terms were "definite and unequivocal," stating that "[d]elay will only increase the amount" of the debt and would not alter the Corps' determination; because it was not hypothetical, and did not represent speculation or opinion; and because it did not suggest that calculation of the debt was open to negotiation, invite the recipient to make a counteroffer, or inform the recipient of any appeal or internal review procedure. *Id.* at 1042-43.

In the letters at issue here, the NPFC based its liability determination on the information the agency "received" regarding the case, rather than on its own investigation of the Partin 5 incident [*see* Doc. 51-1]. These letters also indicate not an absolute finding of liability, but instead the NPFC's "belief" that the recipients of these letters were liable for the costs identified therein [*see id.*]. These facts initially suggest a finding of non-finality, in line with the *Mineta* decision.

However, based upon this "belief," the NPFC enclosed with these letters a bill for costs, including supporting documentation [*see id.*]. It also notified the recipients that they would be charged for interest if they did not pay in full [*see id.*]. It further notified the recipients that any debt would be referred to the Justice Department for litigation or to the DMS for collection and for the charging of additional fees [*see id.*]. And the letters closed with a preservation of the lines of communication, but only for the purposes of ensuring proper compliance with their terms, not for further negotiations as to the substance of the

decision represented therein [*see id.*]. In short, these letters represent the unequivocal determination, subject to no further agency review, by the NPFC that the recipients were liable for the costs incurred by the federal defendants for the Partin 5 incident. They satisfy the first *Bennett* factor for that reason.

Even where agency action marks the "consummation" of the agency's decisionmaking process, however, that action will not be final unless it satisfies the second *Bennett* factor. The second factor, as noted above, is whether the action is one "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 178 (quoting *Port of Boston*, 400 U.S. at 71). For an agency action to satisfy this factor, it must have some legal effect on the affected party. *See Coxco Realty, LLC v. U.S. Army Corps of Eng'rs*, No. 3:06-CV-416-S, 2008 WL 640946, at *5 (W.D. Ky. Mar. 4, 2008) (finding that the Corps' determination that certain wetlands were subject to its regulation did not affect the legal rights or obligations of the owner of the wetlands). The fact that agency action may have a "devastating effect" on a company's business, standing alone, does not make the agency's action final. *Mineta*, 357 F.3d at 645; *see also Lasmer Indus., Inc. v. Def. Supply Ctr. Columbus*, No. 2:08-CV-0286, 2008 WL 2457704, at *6 (S.D. Ohio June 13, 2008) (fact that agency action may result in hardship does not render that action final). Legal consequences, not economic consequences, are the touchstone for determining whether the second *Bennett* factor is satisfied. *Air Brake Sys., Inc. v. Mineta*, 202 F. Supp. 2d 705, 712 (E.D. Mich. 2002); *see also Caretolive v. Eschenbach*, 525 F. Supp. 2d 938, 949 (S.D. Ohio 2007) (quoting *Bennett*, 520 U.S. at 178) (finding that a response letter

22

from Food and Drug Administration did not satisfy second *Bennett* factor because it did not

"alter the legal regime"). Finally, "[r]eliance on a letter warning that sanctions may result

from the failure to comply with federal regulations does not automatically convert the letter

into 'final agency action' under the APA." *Mineta*, 202 F. Supp. 2d at 712.[11]

There can be no doubt that these letters, identifying as they do the potential liabilities

of Bituminous under several different federal statutes, force Bituminous to action. Nor can

there be any doubt that these letters require Bituminous to give careful consideration to its

legal strategy in this case, as any attempt by Bituminous to settle its claims with the non-

federal defendants may expose it to liability under the statutes that the federal defendants

have identified. But, the Court concludes, these letters do not actually determine

Bituminous's "rights and obligations" under those statutes. These letters instead merely

reflect the NPFC's opinion as to what Bituminous's rights and obligations are under those

statutes. Indeed, the letters themselves indicate that noncompliance with their terms will

result not in enforcement by the federal defendants, but rather in referral of the claims to

---

[11]In examining the finality issue, the Court has also reviewed the cases cited to by the parties in their motion papers. In support of the argument that these letters do represent final agency action, Bituminous cites to a 1994 Texas district court case, *Int'l Marine Carriers v. Oil Spill Liab. Tr. Fund*, 903 F. Supp. 1097 (S.D. Tex. 1994), which the federal defendants readily distinguish from the case at bar [*see* Docs. 51, 56]. In support of the contrary argument that these letters do not represent final agency action, the federal defendants point primarily to a 1994 Louisiana district court case, *Conoco Inc. v. United States*, No. 93-3080, 1994 WL 24249, at *2 (E.D. La. Jan. 14, 1994), which offers several "pragmatic factors" to consider in making a finality determination, and a 2005 Indiana district court case, *The Ohio Cas. Ins. Co. v. Reed*, No. 1L04-CV-2027-DFH-WTL, 2005 WL 1703256, at *4 (S.D. Ind. July 2005), which rejects the notion of granting interpleader in the face of a valid claim for sovereign immunity "merely because it would be more convenient for the court and the other parties to do so."

either the Justice or the Treasury Department. These agencies will then make their own independent determination as to whether further pursuit of the federal defendants' claims is warranted.

In short, no legal consequences flow from the issuance of these letters. To the contrary, "the rights and obligations of the parties were precisely the same the day after [the letters were issued] as they were the day before." *Coxco*, 2008 WL 640946, at *5. They do not satisfy the second prong of the *Bennett* test for that reason, and thus do not represent final agency action under 5 U.S.C. § 704.

Nor, finally, can the February 26, 2009 letter from Michelle Bas to Peter Loria at Denenberg Tuffley, PLLC, be considered final agency action [*see* Doc. 51-1]. This letter merely informs Mr. Loria that the NPFC has an outstanding federal claim against Walden and ZTX for $1.5 million; identifies the relevant federal statutes that "may" apply in the event that insolvency prevents payment of the debt to the government; argues that whether Bituminous's insurance policy covers the United States' claim is "irrelevant" to the right of the United States to be paid first under the relevant statutes; and notifies Mr. Loria of Ms. Bas' "expectation" that the matter will be referred to the Justice Department for further action if the debt to the United States is not paid [*Id.*]. For all of the reasons cited above, this letter also does not satisfy the finality requirement of the APA.

None of the agency actions cited by Bituminous represent final agency action under 5 U.S.C. § 704. As a result, the APA cannot serve as a waiver of sovereign immunity

permitting this Court to exercise subject matter jurisdiction over the attempted interpleader of the federal defendants.

## IV. Conclusion

For all of the reasons cited above, this Court lacks subject matter jurisdiction over the claims asserted against the federal defendants. Accordingly, the Motion to Dismiss by National Pollution Funds Center and United States Environmental Protection Agency [Doc. 46] is hereby **GRANTED**. Defendants NPFC and the EPA will be dismissed from further proceedings in this case.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE